KHALAF B. BASHOUT AND NAJAT BASHOUT, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bashout v. Commissioner
Docket No. 768-88
United States Tax Court
T.C. Memo 1991-157; 1991 Tax Ct. Memo LEXIS 176; 61 T.C.M. (CCH) 2371; T.C.M. (RIA) 91157; April 8, 1991, Filed *176 Decision will be entered under Rule 155. Khalaf B. Bashout, pro se. James S. Yan, for the respondent. GERBER, Judge. GERBER
MEMORANDUM OPINION Respondent, in a statutory notice of deficiency, determined, for petitioners' 1982 taxable year, a $ 19,401 Federal income tax deficiency and a $ 970 addition to tax under section 6653(a)(1), [1] plus an additional amount equal to 50 percent of the interest payable with respect to the portion of the underpayment attributable to negligence determined under section 6653(a)(2). After considering the parties' agreements on certain issues, there remain for our consideration various issues involving: (1) Substantiation of claimed deductions; (2) whether petitioners failed to include rental and/or interest income; (3) whether petitioners are entitled to a deduction attributable to theft or casualty loss from fire; (4) whether petitioners are liable for self-employment tax; and (5) whether petitioners are liable for the additions to tax under section 6653(a)(1) and (2). For convenience, our findings of fact and opinion will be stated separately for each issue. *177 General Findings
At the time their petition was filed, petitioners had their legal residence at 2038 Fairburn Avenue, Los Angeles, California. (Use of the term "petitioner" will denote Khalaf B. Bashout.) Whether petitioners failed to report $ 1,707 of interest income - Petitioners reported $ 873 of interest income on their 1982 jointly filed individual Federal income tax return. Respondent determined, based upon reporting by banks and savings and loan institutions, that petitioners had earned $ 2,580 and that petitioners failed to report $ 1,707 in interest income. Petitioners contend that the $ 1,707 amount should not have been reported by them because that amount belonged to and was eventually paid to other individuals. At some time prior to 1982, when petitioner first came from Egypt, he was befriended by two sisters, Elizabeth Wasylkiewicz and Halina Lewicka (the sisters). The sisters opened their home to petitioners and apparently assisted petitioner wife in delivering her first child. During 1982, one or both of the sisters were engaged in some type of eviction proceeding and a judgment was entered against them. The sisters asked petitioner to hold their $ *178 76,291 certificate of deposit in his name (as a nominee) until their legal problems were resolved (the sisters were apparently attempting to avoid their creditors). Petitioner agreed and the proceeds of the $ 76,291 were placed into $ 36,000 certificates of deposit and in two different bank accounts for various purposes. One of the bank accounts reflected petitioner as holder, but had the sisters' address. Petitioner held the accounts and/or certificates of deposit for about 45 days, when the sisters' legal problems were resolved, or subsided, and then he returned the certificates of deposit to the sisters. During the period that the funds were shown in petitioner's name, he received the interest, some of which was deposited in his personal bank account. Petitioner, however, paid the sisters all interest earned on their money. Respondent does not argue that the funds did not belong to the sisters, but instead that the interest was earned by petitioner and not paid over to the sisters. Respondent also argues that petitioner's testimony is self-serving. Petitioners bear the burden of proving that they are not liable for tax attributable to the interest earned on the nominee *179 deposits. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1930); Rule 142(a). We find that petitioner has established that the principal and interest belonged to the sisters. Although respondent has shown some discrepancy regarding the addresses on the accounts, petitioner's uncontroverted testimony, when considered in conjunction with the documentary evidence, leads us to the holding that petitioner held the funds as a mere nominee and was not entitled to the interest. Accordingly, petitioners were not required to report any more than the $ 873 in interest reported by them on their 1982 Federal income tax return. Whether petitioners failed to report $ 26,102 of rental income - Petitioners reported $ 65,600 as rent from their Olive Street real property (Olive). Olive was an apartment building with 20 units. During the first 4 months of 1982 Olive was managed by Titus Real Estate Investments (Titus). Titus kept books which reflected the amount of rent collected for the first 4 months. After April 1982, Titus was no longer involved and petitioner managed the property. Petitioner sold the building on December 15, 1982. Petitioners' records are incomplete and respondent *180 used a reconstruction method to compute the annual rental receipts based upon the records available for January through April 1982. Respondent's agent divided the first 4 months of receipts kept by Titus to arrive at average monthly rental per apartment. The agent then took the actual receipts of $ 31,507 for January through April, and added to that $ 55,195, for the period May through November, which was computed based on the average rental. Finally, the agent added $ 5,000 which was the amount of rent attributed to petitioner in the settlement and closing statement upon the sale of the building on December 15, 1982. These three amounts totaled $ 91,702, which was reduced by the $ 65,600 reported by petitioners, resulting in respondent's determination that petitioners failed to report $ 26,102 in rental income. Although petitioner did not have complete records, he also reconstructed the records available to compute the amount of rent received for each of the apartments based upon Titus' records and from his own records kept after April 1982. Based upon those records, petitioner computed that his rent receipts for 1982 were $ 73,592. Accordingly, for purposes of trial, petitioner *181 concedes that the amount of rental income was understated by the difference between $ 65,600 and $ 73,592, or $ 7,992. Petitioner also made the argument that a portion of the amounts reflected by Titus constitute security deposits which are not income, but which would be returned to lessees. In reviewing the receipts for 1 month, a $ 725 security deposit was included in the total amount of collections from renters. Respondent's agent's computations do not reflect a reduction for security deposits. Accordingly, the 7 months reconstructed by respondent must be reduced by an average monthly amount for security deposits. Based on the record in this case, it appears reasonable to account for one security deposit per month. Therefore, respondent's computation must be reduced by $ 5,075. When Titus had taken over the management of the building, they raised the rents and required security deposits of lessees. This action caused dissention and discontent amongst lessees. Due to these circumstances, petitioner threatened to sue Titus, but their differences were resolved by agreement permitting petitioner to be released from his contract with Titus and freeing him to manage his own *182 property. After Titus left at the end of April 1982, there were some vacancies and some refusals to pay rents. Petitioner accounted for these aspects in his computation totaling $ 73,592. Initially, we note that petitioner did not show that he had adequate books for the 7 months reconstructed by respondent. Accordingly, we hold respondent's need to use and his method of reconstruction were generally reasonable. Clark v. Commissioner, 266 F.2d 698, 708 (9th Cir. 1959); Halle v. Commissioner, 7 T.C. 245, 250 (1946), affd. 175 F.2d 500 (2d Cir. 1949). Petitioner has shown that respondent's reconstruction is partly in error because of the inclusion of the security deposits and because respondent's computation does not account for failure to pay rent and vacancies. Ordinarily, there may be some controversy over whether security deposits are to be included in income, but here petitioner sold the building before the end of the taxable period and that issue becomes moot. We find that respondent's computation should be reduced by $ 10,000 to account for these differences, resulting in a $ 16,102 net increase to petitioners' rental *183 income reported for 1982. Substantiation of $ 3,216 in claimed legal expenses - Petitioners, on Schedule E of their 1982 Federal income tax return, claimed $ 3,216 for legal expenses. Due to a math error, only $ 1,608 was deducted on their return. Respondent disallowed the entire amount for lack of substantiation. Petitioner, in connection with his termination of contractual relations with Titus and lessee problems, hired two different attorneys to represent him on various legal matters connected with the Olive apartments. Petitioner was able to produce checks totaling $ 2,100, but actually paid the attorneys $ 3,100. Respondent argues that $ 100 of the legal representation was personal and in connection with a charge concerning disturbing the peace. Petitioner counters that all legal fees were related to the Olive apartments and the production of income. We find that petitioners are entitled to $ 3,000 of legal fees for their 1982 taxable year. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). Substantiation of real estate taxes - Petitioners claimed $ 6,480 of taxes on Schedule E in connection with the Olive apartments. During the *184 audit, petitioners substantiated $ 5,108 of taxes, resulting in respondent's disallowance of $ 1,372 for lack of substantiation. Petitioner was able to produce two checks, totaling an amount approximating $ 5,346.50, for real estate tax payments on the Olive property for 1982. Petitioner claims to have had a third check which would substantiate the $ 1,372 amount disallowed by respondent, but that check was not available at trial. Our review of the record revealed that the escrow statement prepared in connection with petitioner's sale of Olive reflects only two equal $ 2,673.25 payments for real estate tax for 1982. These two payments total $ 5,346.50. The escrow statement also shows that the buyer of Olive paid $ 237.60 (which appears to be a proration for the last 2 weeks of December 1982) of the real estate tax for 1982, leaving $ 5,108.90 paid by petitioner. Accordingly, we find that the record in this case does not support the deduction of any amount of real estate tax regarding Olive in excess of the $ 5,108.00 allowed by respondent. Petitioners' entitlement to theft and casualty loss deductions during 1982 - Petitioners claimed losses from two different events during *185 1982. Respondent does not question the occurrence of the events (theft and fire), but respondent does question whether petitioners can show that they are entitled to any amount in excess of the insurance reimbursement received with respect to claims made by petitioners. Concerning the theft, petitioners reported $ 90,645.70 as the loss of the property taken from their residence. Under their policy, only $ 39,675.70 was scheduled or covered. The remainder of the items (jewelry, precious metals, and precious stones) were unscheduled and unclaimed. Accordingly, the insurance company paid the full amount of the claim, but not the full amount of the loss. On their 1982 Federal income tax return petitioners claimed that the fair market value of the stolen property was $ 50,000 and they claimed entitlement to $ 10,324 in excess of the $ 39,675.70 insurance reimbursement. Respondent's agent placed a $ 29,254 value on the stolen property. Because the reimbursement exceeded the value determined by respondent, no amount was allowed in connection with the theft of property from petitioners' residence. Section 165 provides for a deduction for losses sustained during a taxable year which *186 are not compensated for by insurance or otherwise. The amount of the loss is limited to the lesser of the cost basis or fair market value of the property, less a threshold amount of $ 100. Sec. 165(c)(3) and (h)(1); sec. 1.165-7(b)(1), Income Tax Regs. The burden of proving entitlement to a deductible loss is upon the taxpayer. Clapp v. Commissioner, 321 F.2d 12, 14 (9th Cir. 1963), affg. 36 T.C. 905 (1961). Petitioners attempted to show that the value (presumably fair market) was accepted by the insurance company, but that the company did not pay any more than the $ 39,675.70 because of policy limitations. Petitioners did not offer any evidence or testimony showing the cost basis or fair market value of the unscheduled and unclaimed property. We are sympathetic with petitioners' situation because it is clear that some loss occurred, but we are unable, based upon this record, to allow any amount in excess of the reimbursement due to a failure of proof. There is insufficient data here from which any amount could be redetermined. The second loss claimed by petitioners concerned a fire in a garage at real estate owned by petitioners. Here *187 again, respondent agrees that a casualty occurred, but argues that petitioners have not shown that they are entitled to a deduction in excess of the insurance recovery. In a sworn statement to the insurance company, petitioners set forth a $ 13,475.90 claim and the insurance company paid $ 13,375.90, which represents the entire claim, less a $ 100 deductible. The $ 13,475.90 was based upon the actual cost to repair the garage damaged by fire. On their 1982 Federal income tax return petitioners claimed a $ 25,000 loss from the fire. After reducing that amount by the $ 13,375.90 reimbursement, petitioners claimed the excess as a casualty loss deduction for 1982. Petitioners argue that they had stored and lost in the fire of the garage "almost 25 desks, typewriters, machines." Petitioners explain that they could not claim these losses of the personal property because they did not reside at the realty where the fire occurred. The record does not confirm that petitioners contemporaneously sought to claim insurance recovery for the personal property. After the commencement of an audit by respondent, petitioner communicated with his insurance agent or broker and made inquiry about *188 a $ 25,000 claim. The insurance agent or broker accommodated the after-the-fact correspondence with petitioner, but in no way confirmed that a $ 25,000 claim had been made originally. Here again, although it is clear that petitioners suffered loss due to fire damage to their real property, the record is insufficient to permit finding any amount of loss in excess of the insurance reimbursement received by petitioners. Additionally, it seems less likely that petitioners actually owned the property described. No explanation was given as to why petitioners would need the office furniture or why it would have been stored at a location distant from their residence and/or business, if any. Accordingly, we hold that petitioners are not entitled to deduct any amount for casualty losses under section 165 for their 1982 taxable year. Addition to tax under section 6653(a)(1) and (2) - Respondent determined that petitioners are liable for an addition to tax for negligence or intentional disregard of the rules and regulations under section 6653(a)(1) and (2). Petitioners bear the burden of proving that respondent has erred in his determination of this addition to tax. Bixby v. Commissioner, 58 T.C. 757, 791 (1972). *189 This addition to tax has been upheld where taxpayers failed to keep adequate records in support of their claimed deductions, or of their income-producing activity. Axelrod v. Commissioner, 56 T.C. 248, 258 (1971). Petitioners have not carried their burden here. Furthermore, petitioners understated their rental income and did not offer adequate records in support of the amount reported. Additionally, petitioners reported what appear to be excessive claims in connection with their casualty losses involving the fire. Accordingly, we hold that petitioners are liable for the addition to tax under section 6653(a)(1) and (2). Self-employment tax and commission income - Petitioners received wages from several sources, including insurance companies and local government. In addition, it appears that petitioner was involved in the real estate business under the named Midland Realty. Petitioner sold the Olive property himself and he deducted a $ 46,800 commission as an expense of sale. Petitioner also included as ordinary income from commissions the same $ 46,800. Ordinarily these two items would, in effect, cancel each other out so that petitioners' taxable *190 income would not change by the inclusion of both. But in this instance, the deduction side related to capital gains thereby reducing income effectively taxed at a lower rate during 1982, whereas the income side is subjected to tax at Petitioners' highest marginal rate. Moreover, the $ 46,800 of reported commissions had some effect upon respondent's computation of self-employment tax. Petitioner testified that his return preparer suggested he use this approach so that he could show future real estate clients his success in sales of realty. Although this particular episode of petitioner's borders on the bizarre and seems void of ordinary meaning, it is clear that the proceeds received by petitioner were entirely for the sale of Olive and no part was for his services to the buyer of the property. Accordingly, we hold that petitioners are not required to report the $ 46,800 of commission income and they are likewise not entitled to the $ 46,800 reduction of the Olive proceeds for commission expense. To the extent that this holding affects the computation of the deficiency, and/or any self-employment tax liability, it should be reflected in the Rule 155 computations. To reflect *191 the foregoing, Decision will be entered under Rule 155. Footnotes
1. Section references are to the Internal Revenue Code as amended and in effect for the 1982 taxable year. Rule references are to this Court's Rules of Practice and Procedure.↩